

**SEC v. Raytheon Co. et. al**
October 15, 2007

## 1.0  GENERAL DESCRIPTION TO IDENTIFY CLAIMANTS AND DISTRIBUTE FUNDS

**IDENTIFICATION AND NOTIFICATION OF CLAIMANTS**

As an initial step in administering the Raytheon distribution, Epiq Class Action & Claims Solutions ("Epiq") will prepare all documents necessary to allow for maximum participation in the distribution by developing a detailed Notice of Settlement for mailing, a Summary Notice for publication, a neutral informational press release, a neutral informational website, and obtaining a toll-free number for our call center for taking notice requests. We would also prepare a cover letter to Nominees to ensure their cooperation in the direct mail notice program.  We will draft the Notice and Proof of Claim Form in plain, easily understandable language.

Using a combination of a Direct Mail Notice, Notice via Broker/Nominee Communications, and Media Publication would ensure that the maximum number of claimants receives the Notice and Claim Form packet and have a meaningful chance to respond or file a claim in the Raytheon matter.  A breakdown of the three notice components follows:

**Direct Mail**

An assigned project manager will work to create a mailing list of potential claimants.  This will be developed through analyzing the transfer agent's list of beneficial owners and from any discovery the SEC had obtained in the case that leads to the identification of the correct notice population (and excluding certain individuals such as named defendants, Raytheon executives, etc.).

The mailing process includes data analysis such as de-duping of files, postal standardization, and address updating.  If addresses are not known to be current, we will pass the file through an address update service such as National Change of Address ("NCOA") or LexisNexis AllFind.

Outgoing mail pieces are bar coded for a quick and cost efficient update of undeliverable pieces to the claims database.  Undeliverable records can then be researched further for re-mailing of notices or reporting to the SEC and the Court.  Re-mailing of notices can happen as often as necessary.  As claims filing or comment deadlines approach, we will re-mail daily.  During less critical periods, we may only re-mail weekly to reduce coordination expenses.

Outgoing mail pieces are assigned a unique tracking number, and the notice database maintains a record of the date of mailing, undeliverable date, address change date and source, and re-mail date.  This is important in order to report to the Court on effective reach of notice.

**Broker, Nominee and Proxy Communication**

Because almost all securities are purchased anonymously through brokers on a stock exchange, one of Epiq's most important duties is to determine the identity of the true purchasers of the securities – the beneficial owners. In addition to obtaining the transfer agent's list of beneficial owners as previously stated, Epiq will research potential beneficial owners by contacting record owners of the affected stocks/bonds during the specified Class Period.  Record owners are typically banks, brokers, and other financial institutions ("Nominees") who purchase



**SEC v. Raytheon Co. et. al**
October 15, 2007

stock on behalf of a beneficial purchaser.  Nominees are a key component in most securities law class action notification procedures as they provide name and address information of beneficial owners involved in the class action who would otherwise remain unknown.  By obtaining the beneficial owner contact information from the Nominees, we can provide direct mail notice to the beneficial owners.

Epiq retains a detailed database of Nominees to whom we send mailings in securities class actions (approximately 4,100).  We will mail to the Nominees a Notice Packet and an additional Nominee Election Letter (together, the "Nominee Packet").  The letter will inform Nominees that they might be a broker or nominee for a beneficial owner of the stocks and/or bonds of Raytheon and will direct them to do one of the following within 10 days of receipt of the Nominee Packet: (i)  provide to Epiq an electronic list of the name and last known address for each beneficial owner, or (ii) request additional copies of the Notice Packet and send a copy by first-class mail to each beneficial owner within 10 days after receiving the Notices.

When a Nominee responds to the Nominee Packet requesting additional copies of the Notice, Epiq will provide those Notices promptly to the Nominee and also provide the Nominee Notice Provision Letter ("Provision Letter") and Nominee Notice Compliance Certification ("Compliance Certification").  The Provision Letter will direct Nominees to mail the requested Notices within 10 days of receiving them and also will outline the process for expense reimbursement.

Epiq's mailing records together with the Compliance Certifications provide the basis for our final reporting of the number of Notice Packets mailed.

**Media Publication**

For publication of the notice, Epiq will place a quarter page advertisement in the national edition of the *Wall Street Journal*, which is recommended as a minimum for all programs.  This publication has a circulation of 1,800,000 and is targeted at potential claimants.  Depending upon the level of outreach the SEC wishes to undertake, the advertisement in the *Wall Street Journal* could be published four separate times, along with four separate placements in *Investor's Business Daily*.  The more expansive publication option will reach more potential claimants, but the cost is correspondingly higher.   Prices for both options are contained in the cost estimate and the number of placements can be modified at the SEC's request.  Epiq would also request that the SEC post the Summary Notice on its website and direct Raytheon to post it on theirs.  Epiq will further disseminate the Notice Summary through other relevant websites such as Securities Class Action Services.

**CLAIMS RECEIPT AND PROCESSING**

**Receipt, Logging and Data Capture**

Epiq will open, log, date stamp, affix a document identification label, and scan all documents received in relation to this project.  Proof of Claim Forms and supporting documentation, as well as all correspondence and responses to class notices will be processed within two business days of receipt.  The timely processing allows the SEC to monitor volume, bottlenecks, and recognized loss trends during the implementation.

In addition to scanning an image of the material received, Epiq will OCR or manually key all data from the hard copy Proof of Claim Forms into ClaimsMatrix™, Epiq's proprietary data processing application.  Claims filed on-



**SEC v. Raytheon Co. et. al**
October 15, 2007

line via the settlement website are recorded directly into ClaimsMatrix™. The aggregate of Web and paper claims in a single database ensure accurate weekly reporting on claim filings and flagging of any duplicate submissions.

**Review Adequacy of Documentation and Completeness**

Epiq reviews the documentation initially to determine that the person filing the Proof of Claim Form is eligible to participate in the settlement/Fair Fund distribution. After discussing the rules for participation in the settlement with the SEC, we accept only approved documents that clearly show the claimant purchased the affected securities during the class period.

A claimant must also provide documentation for each transaction claimed on the Proof of Claim Form. The claimant may not provide documentation supporting only the transactions that increase recognized loss while refusing to supply documentation of transactions decreasing that loss or showing a gain.

If the claimant meets initial qualification requirements, Epiq then reviews the broker's confirmation statements to determine whether the documents evidence the transactions claimed on the Proof of Claim Form. Unlike other administrators that will accept tax documents prone to fraud, Epiq requires claimants to submit genuine and sufficient documentation to show their holdings in the affected securities during the Class Period. The documentation must include the name of the owner of the account for which the claimant is filing a claim, the name of the broker through whom the security was traded, trade date, number of shares and price per share (excluding brokers' commissions and fees). Acceptable documentation includes brokers' confirmation slips, account activity pages from brokers' computer printouts (including the front page), or account activity pages from brokers' monthly statements (including the front page) if those statements contain the required information listed above. A claimant's own records, stock certificates, or letters from the broker do not constitute acceptable documentation.

To reduce tax reporting obligations for the fund and the claimant, Epiq reviews the documentation to confirm the claimant has filed separate claims for each legal entity that may have traded in the affected securities. For example, if the claimant has purchased the securities in separate accounts for his/her 401(k) plan, a trust, and a joint account with a spouse, Epiq will require a claimant to file for each of the separate entities.

We perform separate audits to confirm that the price per share on the date of the trade was within historical price ranges to eliminate short sales that are not properly part of the settlement. We also conduct other numerical analyses to prevent unintentional duplicate claims filings, such as instances where the claimant, the financial adviser, the trustee, and/or the custodian all file claims for the same shares unaware that the other parties have also filed claims.

**Incomplete Claims and Rejection Notices**

If a Proof of Claim is incomplete for one of the agreed upon reasons (such as inadequate documentation, missing tax identification number, missing release signature, etc.), Epiq will send a notice to the claimant explaining the reason the claim is defective and providing information to remedy the deficiency, along with a deadline by which any resubmission must be submitted. A standard 15-day deadline is the minimum recommended response time for providing the documents necessary to cure the claim. This deadline is aggressive but sufficient and allows the



**SEC v. Raytheon Co. et. al**
October 15, 2007

fund to proceed to disbursements in a timely fashion while providing equitable opportunity for claimants to provide additional information.

If the claim is defective in a way that cannot be cured (e.g., no purchase of the affected securities within the class period or no loss within the terms of the distribution plan), Epiq will send a notice to the claimant explaining that their claim is being rejected, the reason the claim has been rejected, and provide the claimant a 10-day deadline to supply documents proving the claimant is eligible to participate in the distribution.

Epiq will establish with the SEC whether a *de minimus* amount should be established wherein claims below this threshold are disallowed and any rules for aggregation.

### Allocation, Reporting and Audit

During the claims processing period, Epiq will provide the SEC progress reports on an agreed upon regular basis. Epiq is able to provide daily communication for various administrative tasks, project activity updates, and dynamic informative updates through our on-line Dashboard reporting. We provide a secure Web interface for statistical reporting through our ClaimsMatrix™ Dashboard. The reported statistical information is provided in an on-line format, which requires security clearance and user authentication. The SEC would have the ability to view the global status of the matter in near real time reporting, access documents, as well as view the status of individual claims. At a minimum, the SEC will receive reports that provide gross numbers of claims received and the number of claims in each status, together with the recognized loss of those claims, and any other information requested.

After the claims filing deadline has passed and all claims have been processed, Epiq will apply the allocation program and determine each claimant's individual recognized loss, as well as the total amount of recognized loss of all claimants. Epiq conducts ongoing quality controls on our work throughout the entire claims processing period. When processing concludes, audits are conducted on a statistically relevant portion of the claims to confirm the validity of the work. For an additional fee, Epiq is also willing to hire an outside accounting firm (subject to SEC approval) to conduct audits.

### FUND MANAGEMENT AND DISTRIBUTION

### Establishing an Escrow Account

Upon receipt of the Fair Fund monies, Epiq will deposit same in a separate Qualified Settlement Fund ("QSF") and obtain a taxpayer identification number of the QSF. Epiq will invest the monies with the first and foremost goal of preserving the principal while also seeking to maximize investment return.

### Final Award Register

After claims processing is complete, Epiq will provide a final award register that will contain a recommendation of the claims that should be paid and the pro rata portion of the fund that should be paid to each claimant. The allocation coding and subsequent reports are verified before submission to the SEC for approval.

**SEC v. Raytheon Co. et. al**
October 15, 2007

## Check Issuance and Mailing Procedures

Once the distribution is approved, checks are printed and mailed to eligible and approved claimants to the address of record. We provide a check register and other reports reflecting the distribution. Following check production, which proceeds through a rigorous review and control process, checks are mailed to claimants.

Distributions are performed on a fee basis, using a trust account that is funded by the Escrow Account. Also, distribution services may be provided for a reduced fee, if Bank of America (an Epiq business partner) holds the funds.

Our checks are printed on-site with MICR encoding and secure check stock. All financial instruments are handled with dual custody and in areas secured by access keys and camera monitoring. The check stock is kept in a secure location and is carefully controlled to prevent misuse.

Other Distribution Activities Include:

- Compile and reconcile information regarding the settlement fund.
- Calculate the distribution of cash due each approved claimant.
- Prepare Affidavit for the court regarding claims processing procedures and proposed distribution.
- Print checks for approved claimants.
- Design a letter to include with distribution check.
- Mail checks to approved claimants.
- Mail 1099 forms if necessary and follow IRS reporting procedures.
- Provide a check register to necessary parties.

The following are services that Epiq can provide to aid in meeting tax requirements:

- Complete Form SS4 to establish TIN for fund.
- Summarize activity in the settlement fund for preparation of U.S. Income Tax Return.
- Estimate and make quarterly payments to qualified depository in a timely manner.
- Prepare Form 1120-SF for Qualified Settlement Fund and file with necessary payments.
- Respond to any communication from the IRS, including late payment penalty notifications, and provide representation at any meetings and/or examinations concerning the settlement funds by the IRS.

## Case Conclusion

Once activities associated with the Settlement Administration conclude, Epiq will take the necessary steps to archive and secure all hard copy and electronic documents, as well as any information contained within the claims application, under standard retention guidelines. The toll-free phone line and website will be shutdown and archived. Hard copy documents will be maintained in our secure vault for one year at which time they will be shipped to a third-party or securely destroyed to ensure the privacy of class member information. All electronic data will be stored for up to three years unless otherwise instructed.

**SEC v. Raytheon Co. et. al**
October 15, 2007

## 2.0   ESTIMATE OF COSTS

Enclosed you will find an itemized estimate. It incorporates a number of assumptions, which are highlighted at the beginning of the estimate.

In estimating the cost of printing and mailing 250,000 checks, we will achieve a lower per piece discount because all 250,000 checks will be printed and mailed simultaneously. The million claim packets were priced according to our experience of mailing smaller volumes at various times based on requests from nominees.

One of the line items in the estimate addresses defective claims processing. Unfortunately this is an area where Epiq has little control over the quality of the claims submitted. Based upon our experience, many claimants submit claim forms without any recognized loss or with incomplete documentation. An estimate that 30% of the claims will be defective is realistic, if not conservative.

Lastly, as per your request, two different levels of media publication programs have been proffered. The least expensive option would be a single quarter page advertisement once in the national edition of the *Wall Street Journal*. The alternate option provides additional advertisements in the *Wall Street Journal*, along with placements in *Investor's Business Daily*. We can also work with the SEC to develop a different customized notice program that addresses any specific concerns.

**SEC v. Raytheon Co. et. al**
October 15, 2007

## 3.0   EXPERIENCE

Epiq has handled over 500 cases with a worldwide scope, including 87 currently active cases. Annually, we mail over 50 million pieces first-class mail, process hundreds of thousands of documents, print more than 15 million checks, and manage $1.5 billion in fund deposits.

Epiq has extensive experience in administering large and complex securities matters. A summary of our securities experience follows:

**In re Electronic Data Systems Corporation Securities Litigation**
Case No. 6:03-MD-1512, Lead Case 6:03-CV-110
United States District Court, Eastern District of Texas, Tyler Division.

Institutional Shareholder Services reported that, at the time of settlement, the Electronic Data Systems case was the third largest securities settlement of 2006 when measured by the total settlement fund amount. Epiq mailed more than 670,000 Proof of Claim Forms to potential claimants around the world, and received more than 130,000 claims. Processing these claims is now complete, and distribution of the $137.5 million settlement fund aims to begin in the near future.

**In re Conseco, Inc. Securities Litigation**
Case No. IP00-0585-C Y/S,
United States District Court, Southern District of Indiana, Indianapolis Division.

In 2002, Conseco was the third largest securities class action. Epiq mailed more than 130,000 Notice and Proof of Claim Forms and received more than 30,000 claims, ultimately distributing the $95 million dollar fund in two separate distributions. The administration on this matter was unusually complex, because the Settlement involved 22 different types of listed securities, including put and call options, bonds, notes, and common stock. Each security had a separate allocation formula.

**Other Securities Cases**

In re Bristol-Myers Squibb Company Securities Litigation
Consolidated Civil Action No.92 CIV.4007 (JES) (SDNY 1992)

In re Ride, Inc. Securities Litigation
Civil Action No. C97-0402 WD (WD Wash 1997)

In re Frank v. Cooper Industries, Inc.
Civil Action No. H-94-0280 (SD Tex 1994)

In re Ambase Corporation Securities Litigation
90 CIV. 2011 (CSH) (SDNY 1990)

**SEC v. Raytheon Co. et. al**
October 15, 2007

In re Einstein Noah Bagel Corp. Securities Litigation
Civil Action No. 97-N-1614 (Consolidated with cases 97-N-1712; 97-N-1713; 97-N-1823; 97-N-1877; 97-N-1894 and 97-N-2318) (D. Colo. 1997) (Einstein Noah Bagel is a related action to the below two Einstein actions with the same caption but different settling defendants.)

In re Einstein Noah Bagel Corp. Securities Litigation
Civil Action No. 97-N-1712 (Consolidated with cases 97-N-1614; 97-N-1713; 97-N-1823; 97-N-1877; 97-N-1894 and 97-N-2318) (D. Colo. 1997) (Einstein 3 (EN3) is a related action to the above and below Einstein actions with the same caption but different settling defendants.)

In re Einstein Noah Bagel Corp. Securities Litigation
Civil Action No. 97-N-1823; (Consolidated with cases 97-N-1614; 97-N-1712; 97-N-1877; 97-N-1894 and 97-N-2318) (D. Colo. 1997) (Einstein II is a related action to the above two Einstein actions with the same caption but different settling defendants.)

In re Home Shopping Network Securities Litigation
93-602-CIV-T-25(B) (MD Fla. 1993)

In re Epstein v. Itron, Inc.
Case No.CS-97-214 (RHW) (ED Wash 1997)

In re Perry Drug Stores, Inc. Securities Litigation
93-CV-74557-DT (ED Mich., S. Div. 1993)

In re Millar v. Pearce Systems International, Inc.
No. 977117 (Cal Super. Ct, San Francisco Co.1997)

In re Pure Tech International Securities Litigation
94-890 (JWB) (D NJ 1994)

In re Technology Solutions Company Securities Litigation
92 C 4374 (ND Ill. E. Div. 1992)

Additionally, the attached Exhibit A includes the biographies of a few of the key people who will be assigned to this case, comprised of two attorneys and Epiq's Director of Class Action.

## 4.0    PRESENT CAPACITY

Epiq employs more than 185 managers, lawyers, accountants, programmers and experienced claims analysts with an average tenure of 10 years. We have our own desktop publishing facility, a robust network-accessible series of high-speed Xerox printers that have MICR ink for check printing. Our mail center allows us to process the mailing of the checks on-site, where rigorous quality assurance steps are performed to ensure accuracy and timeliness of mailing.

Epiq staffs an in-house call center where phone calls are regularly respond to 9:00 AM to 9:00 PM Eastern Time Monday though Friday, with the capacity to expand to 24 hour coverage seven days per week. In addition, we have employees who speak 18 languages fluently.

Epiq prints more than 15 million checks annually through our in-house printing facility.  Routinely, we print more than 1 million checks per month. Our capacity will easily allow us to print and mail 250,000 checks for this distribution within a week, once calculations have been performed and the distribution has been reviewed and approved.

Our infrastructure, processes and procedures have passed the rigorous, independent audits of bank and insurance clients, and we hold a SAS 70 certification, essential to any provider of services to the financial industry. Our main facility in Beaverton, Oregon is more than 90,000 square feet, but we also have offices in New York, Los Angeles, Washington DC, Kansas City and Miami.

## 5.0 DURATION OF DISTRIBUTION PROCESS

Implementing the most aggressive timelines allowable, Epiq estimates that the initial distribution (excluding any check reissues) could be accomplished within 180 days following Court approval of the distribution plan if certain conditions are met. This estimate allows for 30 days to compile and mail the Notice Packets to nominees and Claims Packets to potential claimants, set up the toll-free number and website and place media notices. A claims bar date will be set for receipt of all claims 100 days after Court approval and a claims determination date set shall be set for 30 days later. An estimated 250,000 checks can be issued within one week of Court approval of the distribution.

Assuming all claimants cash their checks, the administration of the case would be closed within one month after the printed stale dates on the checks. If some claimants do not cash their checks and a second distribution of the residual balance is required, time estimates would need to be adjusted.

This is an extremely expedited schedule. Epiq believes that a more effective distribution could be accomplished given additional time. A timetable that would result in more participants could be achieved if a claims bar date was established 150 days after Court approval of the plan. Epiq traditionally also allows for an additional 60 days to reissue stale/lost checks. These changes would correspondingly extend the completion date to 290 days, but would most likely also result in more investors recouping their losses.



**SEC v. Raytheon Co. et. al**
October 15, 2007

## 6.0  PENALTIES

Epiq would agree to accept penalties for failure to perform according to established deadlines, provided appropriate contingencies are incorporated.  A 10% penalty (excluding actual expenses such as postage, etc.) is not unusual (although Epiq has never been assessed such a penalty).



**SEC v. Raytheon Co. et. al**
October 15, 2007

## 7.0   OTHER CONSIDERATIONS

**FRAUD PREVENTION**

Throughout its history, Epiq has been an industry leader in addressing and preventing fraudulent transactions. We have accomplished this goal through arduous training of claims analysts to keep a watchful eye for suspicious claims. We encourage our analysts to investigate when they are alerted by "red flags." We also implement internal procedures to prevent unscrupulous activity and to protect our clients' and class members' private information.

Epiq has been instrumental in working with law enforcement to curtail illegal activity. In 2005, Epiq worked with the Department of Justice to prosecute Alan Scott who attempted to submit phony claims in the Conseco Securities Litigation and the Western Savings & Loan Securities Litigation being administered by Epiq. Our staff identified that Mr. Scott had submitted fraudulent tax records, and not the brokers' trading confirmation slips which Epiq requires, to support his claims. With the assistance of testimony by Epiq experts, Mr. Scott was recently sentenced to another 3 ½ years in a federal penitentiary.

Prior to our involvement, Mr. Scott and Richard Lagerveld had collected a total of over $9 million dollars through separate but similar false claims submitted to other claims administrators who failed to catch the doctored documentation and paid the claims, mailing the multimillion dollar checks to Lagerveld at a homeless shelter in San Diego, and to Scott at a federal penitentiary.

**SECURITY AND PEACE OF MIND**

Epiq Systems is a nationally traded company with gross revenues in 2006 of $224 million. In undertaking this administration, Epiq will bring almost 40 years of experience handling the most sensitive and complex data and applications for clients across a range of industries, from financial and healthcare to manufacturing and services. The Epiq Team will utilize pre-existing system management processes, years of operations and maintenance experience with systems at similar or higher activity volumes and pre-existing, proven systems to deliver the most value to the SEC. The systems that we will utilize in the Raytheon matter already support 24x7 operations, are architected for redundancy (i.e., no critical single points of failure) and have sophisticated disaster recovery plans.

Epiq application development work is done in a highly controlled environment where SAS 70 prescribed processes – for example, the separation of development, test and production environments – are carefully followed. Epiq solutions are supported by a secure network environment. Our network is perimeter-secured with internal and external firewalls which are frequently tested and monitored. Web servers operate in a protected "DMZ" zone, and Web-based applications that contain client specific data operate under SSL with 128-bit encryption. The process, protocols, infrastructure and applications have all been thoroughly tested and audited to conform to the highest standards adopted by financial institutions. We also support customer solutions with a leading-edge hardware platform that includes HP/Compaq servers, Cisco Routers, and EMC and Isilon storage with access to over 12 terabytes of capacity. Critical Web servers, database servers and business object servers are clustered to offer fail-over protection.

# EXHIBIT A

**DAVID L. GARCIA**
**Project Manager**
*Epiq Class Action & Claims Solutions, Inc.*
Phone:    (503) 350-4289
Fax:       (503) 350-5890
Email:    dgarcia@epiqsystems.com

---

**David Garcia** is a Project Manager in the Client Services Department of Epiq Class Action & Claims Solutions (Epiq). As a member of the class action team, he oversees all aspects of case administration, including design and implementation of settlements, budgeting, personnel management, and quality assurance.

◆ *Education*
David earned a Bachelor of Science degree in Finance with minor focuses in Accounting and Economics from Portland State University in 2005. He currently attends the University of Oregon as he earns his Master of Business Administration.

◆ *Experience*
Before joining Epiq in 2002, David served in the United States Marine Corps for eight years. Since joining Epiq, he has worked in all aspects of class action and mass tort case administration, starting as a Claims Analyst before being promoted to the management level in 2003.

With Epiq, David consults on class action settlements both domestically and internationally, and oversees systems design and database administration. David has worked on or managed over 75 cases in his career, working closely with defendants, defense counsel, plaintiffs' counsel, dispute resolution experts and other neutrals. He has experience in cases with a wide range of actions, including environmental hazards, building materials, product liability, discrimination, wage litigation, domestic and international securities, and insurance.

A few examples of the cases for which David has been appointed Project Manager are:
- **Sprint Shareholder Litigation** (stock conversion involving tens of thousands of shareholders)
- **Exxon Valdez Oil Spill Settlement** (52 unique Plans of Distribution)
- **Aharonoff v. Colonial Penn** (Non-OEM replacement parts with over 750,000 class members)
- **National Treasury Employees' Union** (Recalculating pay adjustments for 200,000 class members over 15 years)
- **Simmons v. Amstar** (a smaller non-OEM replacement parts case)
- **Wilson v Massachusetts Mutual** (Premium calculations issue with over 2 million class members)

With Epiq, David regularly directs and coordinates the following aspects of case administration:
- **Overall Class Action Project Management:** Milestone Reporting, Budgeting, Cost Management;
- **Client Consultation:** All facets of Case Administration;
- **Direct Mailings:** Small through Large (million pieces plus), Drafting Content, Materials, Quality Control;
- **Custom Databases:** Specifications, Setup, Data Capture/Import, Custom Programming;
- **Toll Free Telephone Services:** Live Operators, Scripting, Automated Voice Response Systems;
- **Settlement Fund Operations:** Check Distributions, Related Tax Issues, Reconciliation.
- **Claims Processing:** Including drafting procedures, Team Oversight, and Quality Reviews.

**NICOLE F.J. HAMANN, M.B.A.**
**Executive Director, Class Action**
*Epiq Class Action & Claims Solutions*



Phone:   (503) 350-5950
Fax:      (503) 350-5890
E-mail:   nhamann@epiqsystems.com

---

**Nicole Hamann**, a senior relationship manager with over 12 years of settlement administrative experience is now the Executive Director of Class Action in the Legal Services Department of Epiq Class Action & Claims Solutions (formerly Poorman-Douglas Corp.). Nicole oversees all day-to-day settlement administration activities and brings a breadth of experience and dedication to controlled processes that have strongly impacted how we deliver our services.

As a principle member of the class action team, she oversees all aspects of case administration, including design and implementation of settlements, budgeting, personnel management, and quality assurance.

◆ *Education*

Nicole graduated from the University of Oregon's Executive MBA program in June 2003. She earned a Bachelor of Science in Biochemistry from the University of Washington in Seattle in 1994. She also completed minor focuses in Psychology and German Language, which led to study at Albert Ludwigs Universität in Freiburg, Germany.

◆ *Experience*

Before joining Epiq in 1995, Nicole was an Anesthesia Technician at the UW Medical Center and did neuro-immunological research in the Multiple Sclerosis Lab at Oregon Health Sciences University. Since joining Epiq, she has been the Claimant Services Manager, the New System Project Manager, and an Account Manager. Nicole has been in an executive position in charge of cases since 1996.

As Executive Director, Nicole also consults on nationwide class action settlements and oversees systems design and database administration. She has provided expert testimony, as cases required, and has worked with some of the leading alternative dispute resolution experts in the country. Nicole has managed over 125 cases in her career, working closely with plaintiffs' counsel, defense counsel, defendants, and other neutrals. She has experience in cases with a wide range of actions, including SEC, truth-in-lending, anti-trust, environmental hazards, civil rights, building materials, product liability, insurance, and wage violations.

A few examples of the cases for which Nicole has been appointed Case Manager are:

- ❖ **Exxon Valdez Oil Spill Settlement**  (52 unique Plans of Distribution)
- ❖ **Pigford v. Johanns** (Black Farmers' Settlement against the USDA)
- ❖ **Hartman v. Rice** (Voice of America Discrimination Settlement for $565 million)
- ❖ **Unocal Refinery Litigation** (Toxic Tort Settlement involving over 50 law firms and $80 million)
- ❖ **National Treasury Employees Union vs. United States**  (Federal employees' backpay case, requiring the recalculation of pay adjustments for 212,000 special rate employees over 15 years)

**R**HONDA **G. M**C**N**ALLY
**Director, Class Action**
*Epiq Class Action & Claims Solutions*



Phone:     (503) 350-5976
Fax:         (503) 350-5890
E-mail:    rmcnally@epiqsystems.com

**Rhonda McNally** is the Director of Class Action in the Legal Services Department of Epiq Class Action & Claims Solutions (formerly Poorman-Douglas Corp.).  She has been an instrumental leader on the class action team for over 15 years.  Rhonda oversees the Class Action department of project managers handling all aspects of case settlement administration activities, including coordination with clients, management of claims processing and implementation of settlements, personnel management, noticing, required reporting, budgeting and quality assurance.

◆ *Education*

Rhonda earned a Bachelor of Arts in Mass Communications from Western Kentucky University in 1991.  She also completed minor focuses in Speech Communications and Public Relations.  Rhonda continues her education through management and business classes.

◆ *Experience*

Prior to joining Epiq in 1992, Rhonda was a Marketing Representative for Successful Money Management Seminars, Inc. in Portland, marketing seminar workshop programs to financial planners, stockbrokers and insurance agents.  Since joining Epiq, she has been a Claims Analyst, the Claimant Services Manager, an Account Manager, an Account Executive, the Legal Services Training Coordinator and currently the Director of Class Action.  She was also the recipient of the Epiq Legendary Service Award in 1999 for *Products and Services Our Customers Brag About*.

With Epiq, Rhonda has consulted on nationwide class action settlements and bankruptcy cases. She has managed a multitude of cases in her career with focus on large complex settlements, including cases with more than $300 million in claim settlements.  Rhonda has overseen systems design and database administration, led problem resolution processes for constantly changing case parameters and new developments within cases, and managed the required service of court documents to hundreds of parties on a daily basis.  She has worked closely with the courts, Special Masters, plaintiffs' counsel, defense counsel, defendants and other neutrals.  Most of her experience is with large complex settlements.

A few examples of the cases for which Rhonda managed are:

- **MCI Non-Subscriber Telephone Rates Litigation**
- **Louisiana-Pacific Inner-Seal Siding Litigation**
- **COLA Area Back Pay Settlement**
- **American Cemwood Roofing Litigation**
- **First USA/Bank One Credit Card Litigation**
- **UAL Corporation Bankruptcy**

**JOSEPH VADALA, ESQ.**
**Business Development Manager**
*Epiq Class Action & Claims Solutions*



Phone:     (503) 350-5976
Fax:         (503) 350-5890
E-mail:    jvadala@epiqsystems.com

___

**Joe Vadala** is a Business Development Manager at Epiq Class Action & Claims Solutions (formerly Poorman-Douglas Corp.).  Joe brings his many years of experience from practicing law in both the private and public sectors to assist our clients in establishing an administration of settlements that is both effective and efficient.  He is dedicated to helping clients address and overcome each and every challenge that is presented.

◆ *Education*

Joe received his Juris Doctor degree from the University of California, Hastings College of the Law in 1992.  Joe is admitted to practice in all state and federal courts in Hawaii and Nevada, as well as in the Ninth Circuit Court of Appeals and the United States Supreme Court.  He earned a Bachelor of Science degree in Business Administration from the University of Nevada, Las Vegas in 1988.

◆ *Experience*

Prior to joining Epiq in 2006, Joe had recently returned from two years of volunteer service in the Peace Corps, where he was stationed in Albania.  Prior to fulfilling this commitment, Joe was the in-house counsel for the University Medical Center, a county-run hospital in Las Vegas, Nevada.  Before undertaking that role, Joe served in a number of positions within the Office of the Nevada Attorney General, ultimately undertaking the title and duties of the Assistant Solicitor General for the State.  Prior to entering government, Joe was in private practice with the small law firm of Jimmerson, Davis & Santoro in Las Vegas.  Joe began his legal career with the law firm of Case & Lynch in Honolulu, Hawaii.